**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ERIK FERNANDO MARADIGA ALVARADO,**

        **Petitioner,**

**v.**

                                           **Civil No. 2:26cv572**

**JEFFREY CRAWFORD,** *Farmville*
*Detention Center*, **et al.,**

        **Respondents.**

## MEMORANDUM ORDER

On June 5, 2026, Erik Fernando Maradiga Alvarado ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 alleging that he is being unlawfully detained at the Farmville Detention Center. ECF No. 1. This Court ordered Respondents to submit a response to the Petition and informed Petitioner of his right to file a reply. ECF No. 4. On June 15, 2026, Respondents filed a brief in opposition arguing that the Petition lacked merit because Petitioner is an "arriving alien" subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). ECF No. 6, at 1. On July 1, 2026, the Court issued an Order instructing Respondents to file a supplement addressing the nature of Petitioner's release from immigration custody in March 2023. ECF No. 7, at 1.

On July 10, 2026, Respondents filed a supplement explaining that Petitioner was released in March 2023 on humanitarian parole "under 8 U.S.C. § 1182(d)(5)." ECF No. 9, at 2. Petitioner has

not yet filed a supplemental reply brief as authorized by the Court's recent Order,[1] but because his Petition has merit, the Court resolves it without awaiting further briefing.  For the reasons articulated below, Petitioner's § 2241 Petition is **GRANTED in part** and Respondents are **ORDERED** to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge.

### A. Background

As established by the sworn declaration attached to Respondents' factual supplement, Petitioner applied for admission into the United States in Eagle Pass, Texas, in March 2023.  ECF No. 9-1 ¶ 6.  He was released into the United States on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5); that parole expired on March 3, 2024.  Id.; ECF No. 8-1, at 24.  Petitioner appeared for two immigration hearings in 2023 and another in January 2025.  ECF No. 9-1 ¶¶ 7-8, 10.  More than a year after his 2025 hearing, on May 19, 2026, Petitioner was "encountered" by Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"), and "taken into civil immigration custody."  Id. ¶ 13.

The record before the Court demonstrates that, between March 2024, when Petitioner's parole expired, and May 2026, when Petitioner was detained, Petitioner had multiple interactions with federal immigration officials.  These included interactions during

---

[1] The Court notes that it has considered the "emergency supplement" that Petitioner filed by mail on June 14, 2026.  ECF No. 8.

which his charge of removability was sustained and his applications for asylum and withholding of removal were denied. ECF No. 9-3, at 2. None of the documentation from these interactions, however, suggests that Petitioner's parole was extended beyond March 2024. To the contrary, it appears that when Petitioner was detained in May 2026, he was detained pursuant to a "Warrant for Arrest of Alien," not a revocation of any then-valid humanitarian parole. ECF No. 9-5.

## B. Discussion

### 1. Interplay between § 1225 and § 1226

The Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." Landon v. Plasencia, 459 U.S. 21, 32 (1982). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

In Romero v. Crawford, No. 3:25cv788, 2026 WL 94634 (E.D. Va. Jan. 13, 2026), and Ponce Vidal v. Crawford, No. 2:26cv134, 2026 WL 561188 (E.D. Va. Feb. 27, 2026), as well as in countless similar cases decided over the last several months, multiple judges of

3

this Court have grappled with the interplay between 8 U.S.C. § 1225(b) and § 1226(a), two statutes governing immigration detention procedures. Historically, § 1225(b) and its <u>mandatory</u> detention provisions applied to noncitizens stopped at or near the border who had yet to establish a "presence" in the United States. In contrast, § 1226(a) and its discretionary bond rules applied to noncitizens who had established a presence in the United States, even if unlawfully.[2] However, in 2025, the government, first through an internal memo and later through a decision by the Board of Immigration Appeals ("BIA"), <u>Matter of Yajure Hurtado</u>, 29 I&N Dec. 216 (BIA 2025), announced a new interpretation of § 1225(b). Based on this new interpretation, "nearly all noncitizens who entered the United States without inspection" and who are later found anywhere in the United States are subject to <u>mandatory</u> detention without a bond hearing under § 1225(b) regardless of how long they have been physically present. <u>Ortega Miranda v. Bondi</u>, No. 3:25cv769, 2026 WL 287179, at *3 (E.D. Va. Feb. 3, 2026) (citation omitted).

The undersigned has repeatedly adopted the emerging majority view that noncitizens demonstrating a long-term presence in the United States are entitled to a discretionary bond hearing under

---

[2] Once arrested on a warrant issued by the Attorney General, a § 1226(a) detainee "may continue to [be] detain[ed]," may be released on a money bond, or may be released on "conditional parole," the equivalent of release on your own recognizance. 8 U.S.C. § 1226(a)(1), (2). Release under § 1226(a), including "conditional parole," is distinct from humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).

§ 1226(a).[3]    See, e.g., Ponce Vidal, 2026 WL 561188, at *2-3 (ordering a § 1226(a) bond hearing and noting that the petitioner, who "resided in the United States for at least a decade" before he was detained by ICE, "unquestionably ha[d] due process rights"); Romero, 2026 WL 94634, at *5-6 (explaining that the government's interpretation of § 1225 "would raise constitutional problems which the Supreme Court is yet to address"); Aroca v. Mason, No. 2:26cv57, 2026 WL 357872, at *19 (S.D.W. Va. Feb. 9, 2026) (finding that the petitioner's interpretation of § 1225 and § 1226 "align[ed] with longstanding constitutional principles" recognizing that "[n]oncitizens physically present in the United States, whether lawfully or unlawfully, are entitled to greater due process protections than those stopped at the border").    In reaching this conclusion, the undersigned has relied on the Supreme Court's longstanding guidance that the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted).

### 2. Impact of Petitioner's Parole

Unlike in Romero, Ponce Vidal, and similar cases, here, the record does not demonstrate that Petitioner's physical presence in

---

[3] Federal judges do not unanimously agree on the issue, as evidenced by a circuit split. Compare Buenrostro-Mendez v. Bondi, 166 F.4th 494, 502 (5th Cir. 2026), and Avila v. Bondi, 170 F.4th 1128, 1138 (8th Cir. 2026), with Barbosa da Cunha v. Freden, 175 F.4th 61, 96 (2d Cir. 2026), Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026), and Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026).

the United States was discovered years after his unlawful entry. Rather, Petitioner arrived in the United States on March 5, 2023, in Eagle Pass, Texas and applied for admission into the United States. ECF No. 6, at 4; ECF No. 9-1 ¶ 6. At that time, Petitioner was granted humanitarian parole for a period of one year, expiring on March 3, 2024. ECF No. 9-1 ¶ 6; ECF No. 9-2.

Though temporary physical presence in the United States is tolerated when humanitarian parole is granted, it comes with a key "reservation of rights by the Government": The Government is authorized to continue to treat the non-citizen on parole "'as if stopped at the border.'" Martinez v. Hyde, 792 F. Supp. 3d 211, 215–16 (D. Mass. 2025) (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)); see 8 U.S.C. § 1182(d)(5)(A) (explaining that humanitarian parole "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States"). Consequently, "even those paroled elsewhere in the country for years pending removal are [fictively] treated for due process purposes as if stopped at the border" when the government later considers their "rights regarding admission." Thuraissigiam, 591

U.S. at 139 (cleaned up).  According to the Respondents' theory as presented in this case, because Petitioner was previously paroled into the United States, he forever remains subject to § 1225(b)(2)'s mandatory detention provisions following the termination of his parole.  ECF No. 6, at 6-7.

Consistent with this Court's findings in Gomez Villalobos v. Crawford, No. 2:26cv12, 2026 WL 1165576, at *1 (E.D. Va. Apr. 29, 2026), Petitioner's current detention arguably has earmarks of both § 1225(b), because Petitioner was paroled into the United States under § 1182(d)(5) at the time of his initial entry, and § 1226(a), because Petitioner was "discovered" unlawfully residing in the United States years after his temporary parole expired. Neither party points to controlling precedent addressing this hybrid factual scenario.

The Court notes its familiarity with, and consideration of, the BIA's ruling in Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025). But Q. Li is factually distinguishable.[4]  In Q. Li, a noncitizen was placed on humanitarian parole after an encounter near the southern border in 2022.  Id. at 67.  As "a condition of the parole grant, the [noncitizen] was required to regularly report to a DHS field office."  Id.  "When the [noncitizen] reported to a DHS field

---

[4] Q. Li is also not binding on this Court.  See Hasan v. Crawford, 800 F. Supp. 3d 641, 657 n.11 (E.D. Va. 2025) ("[T]his Court owes little deference to the BIA's interpretation of the INA." (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024))); Velazquez v. Raycraft, No. 25cv13675, 2026 WL 447417, at *5 (E.D. Mich. Feb. 17, 2026) (explaining that the court is not "bound by the BIA's recent decision in Matter of Q. Li").

office for a scheduled appointment" in November 2024, she was taken "into custody and issued . . . a notice to appear for removal proceedings and a notice of custody determination." Id. The BIA concluded that when the noncitizen's parole was terminated, she "returned to [mandatory] custody under section 235(b) pending the completion of removal proceedings." Id. at 69-70 (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i)). Importantly, the BIA further concluded that the noncitizen's grant of parole "was automatically terminated when she was served with a notice to appear," a finding that the noncitizen's <u>uninterrupted</u> parole had not terminated prior to her re-detention in 2024. Id. at 70.

In contrast, here, under the facts as presented by Respondents, Petitioner's parole ended more than two years <u>before</u> he was detained in May of 2026. Respondents do not point to any steps the government took during this multi-year period to enforce the end of Petitioner's parole by taking Petitioner into custody. Nor is there any record evidence that the government sought to renew or extend Petitioner's parole. Therefore, unlike in Q. Li, the record before the court demonstrates that Petitioner had no legal status for over two years, during which he established a long-term, albeit unlawful, presence in the United States. As explained in further detail below, these events cannot be reasonably construed as a valid continuation of the "legal fiction" that Petitioner remained stopped at the border.

8

First, although controlling precedent clearly establishes that the legal fiction of non-presence as applicable to <u>admission rights</u> can continue for several years, <u>Thuraissigiam</u>, 591 U.S. at 139, some district courts have concluded that <u>Thuraissigiam</u> does not directly address whether this fiction extends to the right to be free from <u>detention</u> without even the minimal process of a detention hearing. See <u>Torres v. Hermosillo</u>, No. 2:25cv2687, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (explaining that the "entry fiction" applied by the Supreme Court in <u>Thuraissigiam</u> applied only to noncitizens' rights regarding <u>admission</u> and that "the Supreme Court has never applied the entry fiction doctrine . . . to constitutionally justify the <u>detention</u> of a person living freely, for years, within the United States" (citations omitted)). To the extent that <u>Thuraissigiam</u> does not extend to detention procedures, this Court finds that Petitioner's multi-year presence in the United States entitles him to the same constitutional rights as other noncitizens first discovered years after their entry. See <u>Rincon v. Hyde</u>, 810 F. Supp. 3d 101, 113 (D. Mass. 2025) (ordering a bond hearing after observing that "to apply the entry fiction doctrine to [a petitioner that was on humanitarian parole for more than three years] is to set aside the plain meaning of the Fifth Amendment altogether"); <u>Strunin v. Garcia</u>, 827 F. Supp. 3d 976, 988 (S.D. Tex. 2026) ("Pretending that Petitioner never entered the United States [during the years

he was a parolee] not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." (quoting Torres, 2026 WL 145715, at *4)); Singh v. Bondi, No. SA-26-CA-0541-XR, 2026 WL 752457, at *8 (W.D. Tex. Mar. 16, 2026) ("Noncitizens who have lived with relative freedom in the United States for extended periods — unlike those detained in immigration processing centers at the border — cannot reasonably be deemed never to have been 'here.'"); see also Zadvydas, 533 U.S. at 693 (discussing the due process protections that emerge "once an alien enters the country," even if their presence is both unlawful and temporary).

Second, even accepting that the "legal fiction" of non-presence recognized in Thuraissigiam extends to detention procedures as applied in Q. Li, this Court finds that such fiction ends when a petitioner has enjoyed years of presence after the expiration of his parole period. As recently explained by another district judge,

> Petitioner is not subject to the entry fiction despite his previous parole into the United States. As this Court has repeatedly stated, Petitioner's parole expired and he continued to remain in the United States for over a year before he was detained. As a result, Petitioner had a similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts.

Rodriguez v. Fields, No. CV 26-117, 2026 WL 1078101, at *11 (E.D. Ky. Apr. 21, 2026); see Martinez v. Lyons, No. 3:25cv1021, 2026 WL

1257330, at *1 (E.D. Va. May 7, 2026) (ordering "a standard § 1226(c) bond hearing" in a case where the petitioner "was not detained in connection with the expiration and termination of his parole, but rather was simply detained after ICE agents randomly 'encountered' him" almost two years after his humanitarian parole expired).

Importantly, here, Petitioner's one-year parole period under § 1182(d)(5) was followed by more than two years of unauthorized but actual presence before Petitioner was "rediscovered" by EOR officials.   Given Petitioner's multi-year (albeit unapproved) presence within the United State, he must be afforded some basic procedural due process, Zadvydas, 533 U.S. at 693, which includes a full and fair hearing under § 1226(a) to determine the propriety of his continued detention.[5]   See Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 307 (E.D.N.Y. 2025) ("[I]t would be illogical to find that [the petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole."); see also Wu v. Stamper, No. 1:26cv90, 2026 WL 608286, at *4 (D. Me. Mar. 4, 2026) ("While the

---

[5] This ruling does not suggest that Petitioner has improved his long-term prospects of remaining in the United States by overstaying his parole; he may instead have harmed them.   However, as part of the promise and protections afforded by the United States Constitution, procedural due process rights apply to "all 'persons' within the United States, including [noncitizens]" unlawfully present. Zadvydas, 533 U.S. at 693.

expiration of humanitarian parole returns a noncitizen to the 'custody from which he was paroled,' it does not function as a temporal loophole that requires summary <u>physical</u> custody years after the fact." (quoting 8 U.S.C. § 1182(d)(5)(A))).

### C. Conclusion

For the reasons outlined above, Petitioner's § 2241 Petition is **GRANTED in part.** ECF No. 1. Respondents are **ORDERED** to provide Petitioner with **a standard § 1226(a) bond hearing** before an Immigration Judge **on or after July 31, 2026, but not later than August 7, 2026.** In line with due process requirements, Petitioner is entitled to <u>sufficient notice of the date of the bond hearing,</u>[6] an opportunity to be heard in a meaningful manner at such hearing, and a ruling premised on his own case-specific circumstances. <u>Cf.</u> <u>Mendez Trigueros v. Guadian</u>, No. 1:26cv205, slip op. at 7 (E.D. Va. Feb. 18, 2026) (ordering that the petitioner be released unless he received a <u>second</u> § 1226(a) bond hearing that was "constitutionally compliant").

Respondents are **ORDERED** to file a status report with this Court within **three (3) days** of the bond hearing, stating whether Petitioner has been granted bond, and, if his request for bond was

---

[6] The hearing timeframe is intended to ensure that Petitioner receives this Order, and the notice of his hearing date, once it is set, sufficiently in advance of his hearing to allow him to prepare and present evidence to the immigration judge.

denied, the case-specific reasons given by the Immigration Judge for that denial.

The Clerk is **DIRECTED** to enter partial judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Memorandum Order to Petitioner and to counsel for Respondents, and administratively close this action.[7]

**IT IS SO ORDERED.**

/s/ ⟨signature⟩
_____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 17 , 2026

_____

[7] Although the case will be administratively closed, the Court retains jurisdiction to ensure compliance with this Order.

13